[Cite as *Werkowski v. EDP Renewables N. Am., L.L.C.*, 2023-Ohio-4178.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

BENJAMIN WERKOWSKI,

    PLAINTIFF-APPELLANT,

      CASE NO. 11-23-06

  v.

EDP RENEWABLES NORTH
AMERICA L.L.C.,

      O P I N I O N

    DEFENDANT-APPELLEE.

---

**Appeal from Paulding County Common Pleas Court**
**Trial Court No. CI 21 026**

**Judgment Affirmed**

**Date of Decision:  November 20, 2023**

---

**APPEARANCES:**

    *Andrea L. Salvino* **and** *Erica Ann Probst* **for Appellant**

    *David A. Lockshaw, Jr.* **and** *Jonathan R. Secrest* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Benjamin Werkowski ("Werkowski") appeals the judgment of the Paulding County Court of Common Pleas, arguing that the trial court erred in granting the motion to dismiss filed by defendant-appellee EDP Renewables North America, LLC ("EDP"). For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Werkowski was an at-will employee of EDP. In June of 2019, EDP was seeking to have a windfarm project approved in Paulding County. However, a local county official had objected to this proposal. Werkowski alleges that he observed an EDP manager give this county official cases of beer at a meeting. He also alleges that EDP then paid roughly $125,000.00 to improve the drain tile on a farm that belonged to the parents of this county official. After this payment, the county official purportedly withdrew his objection to the company project. Werkowski then reported these activities to EDP's corporate attorneys. By November 2019, Werkowski had not received word that any action had been taken in response to his report. For this reason, he then informed human resources of what he had observed. In December 2019, he went to human resources a second time to discuss his earlier complaint. EDP then terminated his employment in January 2020.

{¶3} On March 1, 2021, Werkowski filed a complaint that raised a wrongful termination in violation of public policy claim against EDP. On May 11, 2021, EDP filed a Civ.R. 12(B)(6) motion to dismiss. EDP argued that Werkowski could not establish the jeopardy element of this claim under the reasoning of the Ohio Supreme Court's decision in *House v. Iacovelli*, 159 Ohio St.3d 466, 2020-Ohio-435, 152 N.E.3d 178. On May 25, 2023, the trial court granted EDP's motion to dismiss.

## Assignment of Error

{¶4} Werkowski filed his notice of appeal on June 15, 2023. On appeal, he raises the following assignment of error:

> **The trial court's decision to grant Appellee EDP Renewables North America, LLC's ('EDP') Motion to Dismiss was improper because Appellant Benjamin Werkowski ('Werkowski') properly satisfied the jeopardy element of his claim for wrongful discharge in violation of public policy.**

## Standard of Review

{¶5} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *Pearsall v. Guernsey*, 2017-Ohio-681, 86 N.E.3d 69, ¶ 8 (3d Dist.). For such a dismissal to be proper, there must be no doubt that the plaintiff cannot prove a set of facts to establish the plaintiff's claim or entitle the plaintiff to relief. *Lima Refining Company v. Linde Gas North America, LLC*, 3d Dist. Allen No. 1-22-08, 2022-Ohio-2185, ¶ 9. If a set of facts exists that would allow recovery and is consistent

with the complaint, the trial court must deny the motion to dismiss. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144, 573 N.E.2d 1063 (1991). "An appellate court reviews a trial court's decision to grant a Civ.R. 12(B)(6) motion de novo." *Strahm v. Kagy*, 3d Dist. Allen No. 1-17-08, 2017-Ohio-4220, ¶ 7. In this process, courts must consider the allegations in the complaint as true and must construe any reasonable inferences from the complaint in favor of the nonmoving party. *Faber v. Seneca County Sheriff's Dept.*, 2018-Ohio-786, 108 N.E.3d 213, ¶ 7 (3d Dist.).

*Legal Standard*

**{¶6}** "In Ohio, the common-law doctrine of employment at will governs employment relationships." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 11. Under this doctrine,

> a general or indefinite hiring is terminable at the will of either party, for any cause, no cause or even in gross or reckless disregard of any employee's rights, and a discharge without cause does not give rise to an action for damages.

*Collins v. Rizkana*, 73 Ohio St.3d 65, 67, 652 N.E.2d 653, 656 (1995). However,

> [i]n *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981 the Ohio Supreme Court created an exception to the 'employment-at-will' doctrine by establishing a cause of action for wrongful discharge in violation of public policy as articulated in a specific statute.

*Luginbihl v. Milcor Ltd. Partnership*, 3d Dist. Allen No. 1-01-162, 2002 WL 987853, *3 (May 3, 2002).

> In order for a plaintiff to succeed on a wrongful-termination-in-violation-of-public-policy claim, "a plaintiff must establish four

elements: (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ('the clarity element'), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ('the jeopardy element'), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy ('the causation element'), and (4) that the employer lacked an overriding legitimate business justification for the dismissal ('the overriding-justification element')."

*House*, *supra*, at ¶ 12, quoting *Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, 137 N.E.3d 1110, ¶ 12. "The clarity and jeopardy elements present questions of law while the causation and overriding justification elements present questions of fact." *Hall v. Kosei St. Marys Corporation*, 2023-Ohio-2021, 218 N.E.3d 205, ¶ 23 (3d Dist.).

**{¶7}** "The jeopardy-element analysis generally involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a wrongful-termination-in-violation-of-public-policy claim." *House*, *supra*, at ¶ 16. "When the sole source of the public policy is a statutory scheme that provides rights and remedies for its breach * * *, we must consider whether those remedies are adequate to protect society's interest as to the public policy." *Id*. "It is less likely that a wrongful-termination-in-violation-of-public-policy claim is necessary" where the statutory scheme includes remedies for violations. *Id*.

**{¶8}** In this analysis, a distinction exists between public policies that "protect a particular government interest" and "public policies that protect substantial rights of the employee." *House, supra*, at ¶ 19, 20. Where a governmental interest is at

-5-

stake, "[t]he lack of a personal remedy in the statutory scheme does not jeopardize the policy because the remedies contained in the statute sufficiently protect society's interest and discourage employers from engaging in the prohibited behavior." *Id.* at ¶ 20. Thus, in deciding the jeopardy element, courts "must determine (1) whether the public policy underlying * * * [the statute] promotes society's interests, protects substantive rights of employees or both, and (2) whether the remedies outlined in * * * [that statute] adequately protect such interests and/or rights." *Thomson v. Boss Excavating & Grading, Inc.*, 2021-Ohio-3743, 179 N.E.3d 728, ¶ 18 (10th Dist.).

*Legal Analysis*

{¶9} This analysis will apply the reasoning of the Ohio Supreme Court in *House v. Iacovelli*, *supra*, at ¶ 17-23. In this case, Werkowski points to several statutes that prohibit bribery or racketeering in R.C. 2921.02, 18 U.S.C. 201, and 18 U.S.C. 1962 as establishing a clear public policy against official corruption. Assuming for the sake of analysis that these statutes satisfy the clarity element, the identified public policy would ultimately promote a governmental or societal interest and would not directly address the substantive rights of employees. *Id.* at ¶ 20, 22.

{¶10} On appeal, Werkowski argues that, in the absence of a personal remedy for employees who are terminated after reporting bribery schemes, the penalties in the identified statutes are "inadequate to protect the employees' substantive rights." (Appellant's Brief, 10). However, the Ohio Supreme Court has

concluded that the "lack of a personal remedy" does not, by itself, jeopardize a public policy where a governmental or societal interest is at stake. *House, supra,* at ¶ 18, 20, 23. Under *House*, the issue is whether the existing "statutory remedies, which do not include a personal remedy for a dismissed employee, adequately discourage the employer's wrongful conduct and are sufficient to protect society's interests * * *." *Id*. at ¶ 17.

{¶11} In determining whether the public policy is adequately protected, the Ohio Supreme Court has considered the penalties imposed for violations of the statutory scheme and the existence of other statutory protections for employees. *House*, *supra*, at ¶ 17, 22. Turning to the case presently before us, the statutes identified by Werkowski contain significant criminal penalties to deter the bribery of public officials. Further, the General Assembly has enacted other provisions to protect whistleblowers, but Werkowski did not avail himself of these protections in this case. *Id*. at ¶ 22. Assuming for the sake of this analysis that the provisions identified by Werkowski satisfy the clarity element, we do not conclude that the existing statutory remedies would be inadequate to protect a public policy against official corruption pursuant to the reasoning in *House*, *supra*, at ¶ 17-22.

{¶12} While Werkowski's arguments are intriguing, the Ohio Supreme Court has held that the "lack of a personal remedy" does not jeopardize a public policy if the statutory scheme provides remedies that would be sufficient to protect the identified governmental or societal interest. *House, supra*, at ¶ 10, 24. Thus, in

this case, Werkowski cannot establish the jeopardy element of this claim. For this reason, the trial court did not err in granting EDP's motion to dismiss. Accordingly, his sole assignment of error is overruled.

*Conclusion*

**{¶13}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Paulding County Court of Common Pleas is affirmed.

**Judgment Affirmed**

**MILLER, P.J. and WALDICK, J., concur.**

**/hls**